## JAMES T. SHATTUCK *vs.* ROBERT EASTMAN.

An action upon a contract to pay a certain sum for the names of certain men furnished by the plaintiff to be presented to the naval commissioners of this state appointed under U. S. St. of 1864. *c.* 237, for allowance to the credit of a particular ward in a city, " if said men are duly credited to said ward, and go to make a part of the quota of said ward," will be defeated by proof that, although tne men were credited to that ward, its quota was full at the time.

After the passage of U. S. St. of 1864, *c.* 237, authorizing the president of the United States to call for any number of volunteers for military service, and the appointment of commissioners for this commonwealth to determine the residence of naval recruits, in order to have them duly credited upon the quotas of the towns, districts or wards where they resided, and the call of the president for five hundred thousand volunteers, the agent of a ward of a city, upon receiving from a broker the names of men to be presented to the commissioners to be credited to his ward, signed a paper providing that " if said men are duly credited to said ward, and go to make a part of the quota of said ward," then the broker should receive a certain sum for each man. The men were credited to the ward, and the broker, upon informing the agent of the ward thereof, requested him if he did not want the men to give a statement in writing to that effect, so that the broker could use the men elsewhere; and the agent replied that if the men were credited he wanted them and would pay for them. *Held,* that the agent was not liable on this promise, if at the time the men were credited to his ward the quota of the ward had already been filled.

An instrument was signed in this form: " Received of A. the names of ten men, whose names I this day present to the state commissioners, praying to have them credited to Ward 6, City of Lowell. If said men are duly credited to said Ward 6, and go to make a part of the quota of said ward, then the said A. is to receive the sum of four hundred and sixty dollars for each man so credited, on demand, when the proper evidence is furnished to the agent of said ward, B., that said men are so allowed and credited to said

Ward 6. (Signed) D., Agent for Ward 6, Lowell." *Held*, that the question whether this instrument should be treated as a personal contract of D. or not depended on circumstances, and should be submitted to the jury under instructions.

CONTRACT brought to recover a sum of money upon the two following instruments :

" Boston, Aug. 13, 1864. Received of J. T. Shattuck the names of ten men, whose names I this day present to Gov. Andrew and Hon. John H. Clifford, state commissioners, praying to have them credited to Ward 6, City of Lowell. If said men are duly credited to said Ward 6, and go to make a part of the quota of said ward, then the said Shattuck is to receive the sum of $460 for each man so credited, on demand, when the proper evidence is furnished to the agent of said ward, Robert Eastman, that said men are so allowed and credited to said Ward 6. Agent for Ward 6, Lowell. Robert Eastman, Ag't for Ward 6, Lowell, Mass."

" Boston, Aug. 13, 1864. Received of James T. Shattuck the names of fifteen men, whose names I this day present to Gov. Andrew and Hon. John H. Clifford, state commissioners, praying to have them credited to Ward 3, City of Lowell. If said men are duly credited to said Ward 3, and go to make a part of the quota of said Ward 3, then the said Shattuck is to receive the sum of $462.50 for each and every man so credited, on demand, when the proper evidence is furnished to the agent of said ward, Robert Eastman, that said men are so allowed and credited to said Ward 3. Ag't for Ward 3, City of Lowell. Robert Eastman, Ag't for Ward 6, Lowell, Mass."

At the trial in the superior court, before *Putnam*, J., the following facts appeared :

The contracts were made not long after the president of the United States had made proclamation [July 18, 1864] calling upon the different states to furnish men for the army, and at a time when the wards named in the contract had not furnished their number or quota of men required by said proclamation.

Governor Andrew and John H. Clifford were appointed

commissioners to ascertain what men of Massachusetts had enlisted in the naval service of the United States before said proclamation, and to determine their residence at the time of enlisting, and appropriate the names to the districts or wards where they resided at the time of enlistment, under U. S. St. of 1864, c. 237.

It appeared that a portion of the names received by the defendant at the time of making the contracts were afterwards allowed and credited by said commissioners to said wards, and that said wards had the benefit of them, and that evidence was furnished to the defendant that the names had been so allowed and credited prior to bringing this action, and that he had expressed himself satisfied that they had been so credited. The credits were allowed by the commissioners at their first hearing, and entered as credited September 5th. After this, and when the defendant was informed of the fact by the plaintiff's agent, he was requested if he did not want the men to give a statement in writing to that effect, so that the plaintiff could use the names elsewhere. He declined to do this, saying that if they were credited he wanted them and would pay for them.

The defendant contended that he was not personally liable upon said contracts; but the judge ruled that he was personally liable. The defendant then objected that the contracts were void as against public policy; but the judge overruled the objection. The defendant then offered to prove that at the time when the names were allowed and credited by the commissioners to said wards, and the evidence that they had been so credited was furnished to him, the quotas of said wards had already been filled from other sources; but the judge excluded the evidence.

It was thereupon agreed that a verdict might be taken *pro forma* for the plaintiff, for $7825, and the case reported for the determination of this court.

*T. H. Sweetser*, for the defendant. These instruments are not agreements, but merely memoranda made by the defendant, acting for the wards; or, if agreements, the defendant is not personally a party to them. *Jenkins* v. *Hutchinson*, 13 Q. B. 744

*Abbey* v. *Chase,* 6 Cush. 54. And, in reference to this, it is immaterial whether the defendant's principals are such bodies as could in law be bound by a contract. *Jefts* v. *York,* 10 Cush. 392. *Rogers* v. *March,* 33 Maine, 106. There was no valid consideration for the contracts. If the men belonged to the wards referred to, then the plaintiff was requiring compensation for giving up that to which he was not entitled. If the men did not belong to those wards, the agreements were corrupt. *Shepherd* v. *Young,* 8 Gray, 152. *Dearborn* v. *Bowman,* 3 Met. 155. These agreements are contrary to public policy. The purpose was to procure the allowance of the men to the credit of those wards, whether they rightly belonged there or not; or at any rate such purpose would be likely to be induced by such bargains. *Fuller* v. *Dame,* 18 Pick. 472. *Marshall* v. *Baltimore & Ohio Railroad,* 16 How. 314. The evidence should have been admitted that when the men were credited the quotas of the wards had already been filled. The money was not to be paid unless the men went to make a part of the quotas of the wards.

*N. B. Bryant,* for the plaintiff. These instruments do not purport to be the contracts of any third party, but, on the contrary, they disclose the fact that there is no principal which could either make a contract or constitute an agent. No credit was or could have been given to anybody but the defendant; and no suit at law or in equity is possible against any other. The word "agent" is mere description, and does not limit the defendant's responsibility. See *Seaver* v. *Coburn,* 10 Cush. 324; *Winsor* v. *Griggs,* 5 Cush. 210; *Simonds* v. *Heard,* 23 Pick. 120; *Forster* v. *Fuller,* 6 Mass. 58; *Thacher* v. *Dinsmore,* 5 Mass. 300. And the manner of signing the second contract shows that he so understood it, describing himself as agent for two wards, when the men referred to were designed for only one. He, moreover, entered into a special contract to pay for the men, after the credits were allowed; and this is a sufficient answer to the point that the quota had been filled from other sources. The defendant then claimed and received the men under his contract. This method of procuring troops was not against public policy.

HOAR, J. The plaintiff has declared upon two written contracts, and by the terms of each his right to receive payment was to accrue, if the men whose names he had furnished should " go to make a part of the quota of the ward." The evidence which was offered by the defendant at the trial, and rejected by th court, that the quota of the wards had been filled from other sources when the men were credited by the commissioners, and notice given to the defendant, was therefore competent and material, and should have been admitted. It negatived a condition upon which the cause of action depended. On this ground the exceptions are to be sustained, and a new trial granted.

It was suggested at the argument that this difficulty was obviated by the proof of the oral agreement stated in the bill of exceptions. To determine the effect of that agreement it is necessary to look at the situation and relations of the parties. It appears that the president of the United States had called for a certain number of men for the army, and that the proportion required from the several districts in the state had been determined, each town and ward of a city constituting a district. By U. S. St. of 1864, *c.* 201, § 3, it had been provided " that all enlistments into the naval service or marine corps during the present war shall be credited to the appropriate township, precinct or district, in the same manner as enlistments for the army." Commissioners had been appointed, whose duty it was to ascertain what credits each district in Massachusetts was entitled to receive under that provision. The defendant, as agent for two wards in Lowell, had signed the written papers declared on in this suit, reciting that he had received from the plaintiff the names of certain men to be presented to the commissioners to be credited to those wards. It would seem that they were men already enlisted in the naval service, and who could therefore be credited to those wards only on the ground that they belonged to the wards at the time of their enlistment. The only consideration moving from the plaintiff, to entitle him to receive the large sum of money which he sues for, was the furnishing the names, and perhaps the evidence that the men belonged to those wards. He was to receive his money, if the

were credited and allowed on the quota of the ward. But it is obvious that they could not justly and lawfully be credited to one place or another at the plaintiff's pleasure. It would be a fraud to procure them to be credited to any other place than that from which they had enlisted, and which was entitled to a credit for them upon its quota.

This being the state of facts, after the plaintiff had furnished the names, as belonging to these wards in Lowell, he said to the defendant that if he did not want the men, he wished him to give a statement in writing to that effect, so that he could use the names elsewhere; to which the defendant replied, that if they were credited he wanted them, and would pay for them.

The objections to charging the defendant upon this evidence are obvious. In the first place, it is not the contract declared on. Secondly, there does not seem to have been any consideration for the promise. The wards had already received all that the plaintiff could furnish, upon the conditional written agreement. But further, the statement of the plaintiff that he could use the names elsewhere could not be true, if his previous conduct had not been dishonest and fraudulent. The men whose names he furnished, if they belonged to these wards, should have been credited there, and nowhere else. If they did not belong to them, it was a fraud to attempt to obtain credit for them. The proposition of the plaintiff seems to imply that he had some kind of property in the men; or that the decision of the commissioners could be changed, according to his private interest in the result. It might induce the suspicion that, in the whole transaction, there was something hardly consistent with public policy or sound morals.

As the case must go to a new trial, it is proper to express an opinion upon the question presented in the exceptions, whether the evidence showed a contract upon which the defendant is personally liable.

The written agreements set forth in the declaration do not contain an express promise by the defendant. The language is, "the said Shattuck is to receive the sum," &c. Whether this is a mere statement or certificate of a fact, or would import a

promise by the defendant, would depend upon the state of facts shown to exist at the time the writings were made, and by which they are to be interpreted. Thus if A. had received merchandise from B. to sell, and, when sold, to pay a specified price, there could be no doubt that a writing signed by A. and stating the receipt of the merchandise, and that, when sold, "B. is to re‐ceive" a sum named, would be a promise by A. to pay that sum. But if the dealing were with another party, and the signer of the paper were merely an officer or agent whose duty it was to certify that the conditions of an agreement had been performed, the same language would not establish a personal liability in him. It is a question to be submitted to a jury with proper instructions, if the case comes again to trial, and its de‐cision may depend upon facts respecting the defendant's agency which are but partially disclosed by the evidence.

*Exceptions sustained.*